UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

ROBERT PANN,

                      Plaintiff,

                                        Case No. 1:22-cv-76

v.

                                        Honorable Robert J. Jonker

B. HADDEN et al.,

                      Defendants.

_____/

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought and was granted leave to proceed *in forma pauperis*. (ECF No. 5.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).

      Applying these standards, the Court will dismiss all of Plaintiff's claims against Defendants Chauvez, Robinson, and Bellamy Creek Correctional Facility (IBC) for failure to state a claim. The Court will also dismiss, for failure to state a claim, all of Plaintiff's federal claims against Defendants Hadden, Johnson, and Guiles, except for Plaintiff's First Amendment retaliation claims against (i) Defendant Hadden regarding the increase in Plaintiff's security level,

(ii) Defendant Johnson regarding the disposal of Plaintiff's footlockers and the issuance of a false misconduct charge and (iii) Defendant Guiles regarding the issuance of the "Interference With Administrative Rules" misconduct ticket. Further, the Court will dismiss any intended state law claims without prejudice. The above-listed First Amendment retaliation claims against Defendants Hadden, Johnson, and Guiles remain in the case. Additionally, the Court will deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

<u>Discussion</u>

## I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains, however, occurred at IBC in Ionia, Ionia County, Michigan. Plaintiff sues IBC and the following IBC officials: Resident Unit Manager B. Hadden, Prison Counselor K. Johnson, Lieutenant K. Chauvez, Sergeant Unknown Guiles, and Grievance Coordinator M. Robinson. (Compl., ECF No. 1, PageID.1–2.)

In Plaintiff's complaint, he states that he arrived at IBC on December 4, 2019. (*Id.*, PageID.3.) At some point on the day of Plaintiff's arrival at IBC, "Plaintiff's unit officer gave Plaintiff a direct order to empty his two footlockers and turn them over to him." (*Id.*) "Plaintiff complied and was issued a contraband removal record for the two footlockers." (*Id.*) Plaintiff states that "[o]ne locker had tape applied for transfer[] due to Plaintiff's padlock [being] missing." (*Id.*)

On December 10, 2019, Plaintiff filed a grievance "due to not being issued a Notice to Conduct Administrative Hearing in compliance with [MDOC policy] for his two footlockers." (*Id.*) On December 13, 2019, as Plaintiff was "returning from IBC's dining room," he saw an inmate taking his footlockers to a dumpster. (*Id.*) The inmate told Plaintiff that Prison Counselor Johnson "directed him to dispose of the footlockers." (*Id.*) Plaintiff states that he "tried to have the

destruction of his footlockers stopped, only to be handcuffed and taken to segregation by staff for [the] false charge of threatening behavior." (*Id.*) Plaintiff contends that "in lieu of admitting her gross negligence," Prison Counselor Johnson "conspired with her unit officers and had false charges filed against Plaintiff." (*Id.*, PageID.4.)

That same day, December 13, 2019, Plaintiff filed a grievance regarding "his typewriter fall[ing] off [the officers'] property cart while they were delivering Plaintiff's legal property," in which he "incorrectly nam[ed] Schultz." (*Id.*) Plaintiff contends that he "is face blind," and "the officer[]s did not have name tags on their uniforms." (*Id.*) Sergeant Guiles responded to the grievance and Lieutenant Chauvez reviewed the grievance. (*Id.*) In Sergeant Guiles's step I response, he provided the correct names for the officers involved in delivering Plaintiff's property, and Plaintiff corrected the officers' names in his step II grievance appeal. (*Id.*)

On December 18, 2019, Plaintiff "received his Notice to Conduct an Administrative Hearing prepared by [Prison Counselor] Johnson." (*Id.*, PageID.5.) Plaintiff states that he received this notice five days after Prison Counselor Johnson "ordered [the footlockers] destroyed." (*Id.*) Plaintiff contends that "[f]ootlockers should last forever, they travel out and under the bunk[,] [a]nd any damage is due to MDOC's transportation officers." (*Id.*)

On December 19, 2019, Plaintiff filed a grievance against Prison Counselor Johnson "for falsifying findings" for Plaintiff's December 10, 2019, grievance regarding the failure to issue a Notice to Conduct Administrative Hearing for his footlockers. (*Id.*) On December 20, 2019, Resident Unit Manager Hadden "held the hearing ex parte, seven days after Plaintiff's footlockers were destroyed," which Plaintiff contends "[p]rov[es] conspiracy and collusion between B. Hadden and K. Johnson." (*Id.*)

On December 20, 2019, Resident Unit Manager Hadden also "held an administrative hearing for Plaintiff's Wilson 700 baseball glove and leather gloves." (*Id.*, PageID.6.) Plaintiff states that he "provided proof of purchase to no avail." (*Id.*) Plaintiff further states that Resident Unit Manager Hadden "informed Plaintiff the gloves were to be held while Plaintiff exhausted the grievance process," but "Plaintiff never received an identifier number for the grievance he submitted[ and] [t]he gloves were never transferred with Plaintiff." (*Id.*)

Plaintiff alleges that "[d]ue to IBC's staff's corruption[,] Plaintiff suffered loss of property, loss of yard privileges, loss of communication with friends and family[,] and was confined in segregation for weeks." (*Id.*, PageID.5.)

On January 7, 2020, Grievance Coordinator Robinson placed Plaintiff on modified grievance access "in retaliation for filing grievances." (*Id.*; *see id.*, PageID.6.) Plaintiff states that Grievance Coordinator Robinson cited the following grievances as justification, which Plaintiff contends were improperly used to justify his placement on modified grievance access:

> #2661: 12/7/19 Plaintiff was not provided Hot Chocolate at breakfast, the kitchen ran out. Dining room staff told Plaintiff, "it's out and there is no more." Inmates seated were drinking hot chocolate. This grievance was rejected due to it affecting the general population. This directly affects Plaintiff! Others had it Plaintiff did not, how is, "affecting the general population" justified for rejection?

> #2798[:] Grievance against K. Johnson for falsifying findings in #2726 claiming Plaintiff was interviewed 12/10/19 when Plaintiff was not. This is a separate issue, proving Johnson's motive for retaliation, collusion, conspiracy, violation of Plaintiff's Due Process and First Amendment rights.

(*Id.*, PageID.5–6.)[1] "Plaintiff wrote Lansing and internal affairs for IBC not providing grievances due to his modified access by M. Robinson." (*Id.*, PageID.6.)

---

[1] Plaintiff also lists another grievance that Prison Counselor Robinson cited to justify Plaintiff's placement on modified grievance access; however, Plaintiff does not indicate what this grievance was about. (Compl., ECF No. 1, PageID.5.)

Plaintiff states that he filed grievances about the following issues, all of which were "rejected as affecting the general population" and "being a warden's forum issue": (i) "not being allowed laundry service," (ii) "not being allowed showers," (iii) "not being provided razors," (iv) "not receiving yard," and (v) "for missing meals." (*Id.*, PageID.6–7.) Plaintiff contends that "[s]egregation does not have an inmate representation to the warden's forum," and all of the issues listed above violated MDOC policy. (*Id.*, PageID.7.) Plaintiff alleges that he "was denied these necessities and was retaliated against for exercising his First Amendment [r]ight when addressing these issues." (*Id.*)

On January 16, 2020, Sergeant Guiles wrote Plaintiff a "Class II misconduct ticket, 'Interference With Administrative Rules[,]'" because Plaintiff had incorrectly named Schultz, "who was not involved in delivering Plaintiff's property," in his grievance. (*Id.*, PageID.4.) Plaintiff states that Sergeant Guiles "waited almost a full month before writing the misconduct," which is contrary to MDOC policy. (*Id.*) Thereafter, Lieutenant Chauvez "held the misconduct hearing." (*Id.*) Plaintiff contends that pursuant to MDOC policy, Lieutenant Chauvez should not have conducted the hearing because he had prior direct involvement in the matter. (*Id.*)

Plaintiff alleges that "[i]nmates informed [him] not to write any grievances, [and] B. Hadden would keep Plaintiff in segregation and increase his custody level." (*Id.*, PageID.7.) Plaintiff states that "B. Hadden increased Plaintiff's security level from II to IV." (*Id.*) Plaintiff further states that he "acquired 11 points[;] 15 points is required for level IV, [and] B. Hadden retaliated increasing Plaintiff's confinement level [to] IV when his true security and confinement levels were [l]evel II." (*Id.*) On February 3, 2020, DRF "reduced Plaintiff's security and confinement to level II." (*Id.*)

Plaintiff alleges that Defendants violated his rights under the First and Fourteenth Amendments. (*Id.*, PageID.7–8.) In addition, Plaintiff alleges that Defendant Hadden violated his Eighth Amendment right "for prison conditions when taken overall," and that Defendant Johnson violated his rights under state law. (*Id.*, PageID.8.) As relief, Plaintiff requests compensatory and punitive damages, as well as declaratory relief. (*Id.*, PageID.9.)

## II.    Motion for Appointment of Counsel

Plaintiff has requested the appointment of counsel. (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel is not necessary to the proper presentation of Plaintiff's position. Plaintiff's motion for the appointment of counsel (ECF No. 3) therefore will be denied.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

6

and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant IBC

Plaintiff names IBC as one of the Defendants in this action. (Compl., ECF No. 1, PageID.1.) However, Plaintiff may not maintain a § 1983 action against IBC. IBC is an administrative unit of the MDOC, and regardless of the form of relief requested, the states and

their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Therefore, Plaintiff's claims against IBC are properly dismissed on grounds of immunity.

Furthermore, IBC is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771. And, regardless, Plaintiff's claims against IBC fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure because Plaintiff fails to name IBC in the body of his complaint. Fed. R. Civ. P. 8(a)(2); *see Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights). For these reasons, Plaintiff's claims against IBC are properly dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b), and 42 U.S.C. § 1997e(c).

### B.    First Amendment Retaliation

Plaintiff alleges that his First Amendment rights were violated because he experienced various acts of retaliation. Specifically, Plaintiff alleges that (i) Defendant Johnson disposed of his footlockers and issued a false misconduct charge after he filed a grievance regarding the failure to

issue a "Notice to Conduct an Administrative Hearing" for the footlockers, (Compl., ECF No. 1, PageID.3); (ii) Defendant Hadden held a "hearing ex parte[] seven days after Plaintiff's footlockers were destroyed[] [p]roving conspiracy and collusion between B. Hadden and K. Johnson," (*id.*, PageID.5); (iii) Defendant Robinson placed him on modified grievance access "in retaliation for filing grievances," (*id.*); (iv) Defendant Guiles responded to one of Plaintiff's grievances and Defendant Chauvez reviewed the grievance; thereafter, Defendant Guiles issued Plaintiff a misconduct ticket for "Interference With Administrative Rules" due to Plaintiff incorrectly naming an officer in his grievance, and Defendant Chauvez conducted the misconduct hearing even though he had prior involvement in the matter, (*id.*, PageID.4); (v) Defendant Hadden held a hearing regarding Plaintiff's baseball glove and leather gloves at which Plaintiff "provided proof of purchase to no avail," (*id.*, PageID.6); (vi) Plaintiff was denied showers, razors, yard time, and some meals, and he "was retaliated against for exercising his First Amendment [r]ight when addressing these issues," (*id.*, PageID.7); and (vii) Defendant Hadden "retaliated [against Plaintiff] increasing [his] confinement [to] level IV when his true security and confinement level[] [was] [l]evel II." (*Id.*)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

### 1.    Disposal of Footlockers, False Misconduct Charge, and Increased Security Level

Plaintiff alleges that Defendant Johnson disposed of his footlockers and issued a false misconduct charge after he filed a grievance regarding the failure to issue a "Notice to Conduct an Administrative Hearing" for the footlockers. (Compl., ECF No. 1, PageID.3.) Plaintiff also alleges that "[i]nmates informed [him] not to write any grievances; B. Hadden would keep Plaintiff in segregation and increase his custody level." (*Id.*, PageID.7.) Plaintiff states that Defendant Hadden "retaliated [against Plaintiff] increasing [his] confinement [to] level IV when his true security and confinement level[] [was] [l]evel II." (*Id.*)

An inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018); *Mack v. Warden Loretto FCI*, 839 F.3d 286, 298–99 (3d Cir. 2016) ("[The prisoner's] oral grievance to [the prison officer] regarding the anti-Muslim harassment he endured at work constitutes protected activity under the First Amendment."); *Pearson v. Welborn*, 471 F.3d 732, 741 (7th Cir. 2006) ("[W]e decline to hold that legitimate complaints lose their protected status simply because they are spoken."); *see also Pasley v. Conerly*, 345 F. App'x 981, 984–85 (6th Cir. 2009) (finding that a prisoner engaged in protected conduct by *threatening* to file a grievance). "Nothing in the First Amendment itself suggests that the right to petition for redress of grievances only attaches when the petitioning takes a specific form." *Holzemer v. City of Memphis*, 621 F.3d 512, 521 (6th Cir. 2010) (finding that a conversation constituted protected petitioning activity) (quoting *Pearson*, 471 F.3d at 741). Plaintiff therefore has alleged sufficient facts to meet the first element of a retaliation claim because Plaintiff's filing of grievances is protected conduct.

To establish the second element of a retaliation claim, a prisoner-plaintiff must show adverse action by a prison official sufficient to deter a person of ordinary firmness from exercising his constitutional rights. *Thaddeus-X*, 175 F.3d at 396. The adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness"; the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original). Defendant Johnson's disposal of Plaintiff's footlockers may be considered adverse action sufficient to support a retaliation claim. *See id.* at 604 (noting that "a number of cases from other circuits have held that confiscating an inmate's legal papers and other property constitutes sufficient injury to support a First Amendment retaliation claim" (citations omitted)). Additionally, Defendant Johnson's issuance of a misconduct ticket and the increase in Plaintiff's security level by Defendant Hadden may both be considered adverse actions that are sufficient to support a retaliation claim. *See Thomas v. Eby*, 481 F.3d 434, 441 (6th Cir. 2007) (discussing that the issuance of a misconduct ticket can "constitute[] an adverse action"); *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005) (concluding that increasing an inmate's "security level was an adverse action because the result of more restrictions and fewer privileges could deter a person of ordinary firmness from engaging in protected conduct" (citations omitted)).

Finally, to sufficiently state a First Amendment retaliation claim, Plaintiff must allege facts that support an inference that the adverse action was motivated by the protected conduct. With respect to Defendants Johnson and Hadden, Plaintiff alleges that the adverse action was linked to the protected conduct temporally. Although Plaintiff has by no means proven that Defendants Johnson and Hadden retaliated against him, the factual allegations, accepted as true and in the light most favorable to Plaintiff, support the inference that the adverse actions taken were motivated by

protected conduct. Accordingly, the Court concludes that, at this stage of the proceedings, Plaintiff has adequately alleged First Amendment retaliation claims against Defendant Johnson regarding the disposal of Plaintiff's footlockers and the issuance of a false misconduct charge, and Defendant Hadden regarding the increase in Plaintiff's security level.

## 2.     Hearings and Misconduct Charge Related to Prior Grievance

Plaintiff alleges that Defendant Hadden held a "hearing ex parte, seven days after Plaintiff's footlockers were destroyed[] [p]roving conspiracy and collusion between B. Hadden and K. Johnson."[2] (Compl., ECF No. 1, PageID.5.) Plaintiff also alleges that, at a later time, Defendant Hadden held a hearing regarding Plaintiff's baseball glove and leather gloves at which Plaintiff "provided proof of purchase to no avail." (*Id.*, PageID.6.)

---

[2] To the extent that Plaintiff intended to allege that Defendants engaged in a civil conspiracy in violation of § 1983, he fails to state such a claim. A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987). Here, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective. Plaintiff appears to rely on the highly attenuated inference of a conspiracy from the mere fact that he received misconduct tickets on several separate occasions. As the United States Supreme Court has held, such allegations, while hinting at a sheer "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Supreme Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). Accordingly, Plaintiff fails to state a plausible claim of conspiracy.

Additionally, Plaintiff alleges that Defendant Guiles improperly wrote Plaintiff a "Class II misconduct ticket, 'Interference With Administrative Rules[,]'" because Plaintiff had incorrectly named an officer, "who was not involved in delivering Plaintiff's property," in a prior grievance. (*Id.*, PageID.4.) Defendant Guiles had responded to, and Defendant Chauvez had reviewed, Plaintiff's original grievance. (*Id.*) Plaintiff contends that, contrary to MDOC policy, Defendant Guiles "waited almost a full month before writing the misconduct." (*Id.*) Thereafter, Defendant Chauvez "held the misconduct hearing" for the misconduct ticket. (*Id.*) Plaintiff contends that pursuant to MDOC policy, Defendant Chauvez should not have conducted the hearing because he had prior direct involvement in the matter. (*Id.*)

### a.    Defendants Hadden and Chauvez

As an initial matter, Plaintiff does not specifically allege that any of the above-discussed hearings over which Defendants Hadden and Chauvez presided were held in retaliation for any protected conduct. Furthermore, even assuming that Plaintiff intended to allege that the hearings were held because he filed grievances—which would be protected conduct—Plaintiff fails to show that Defendants Hadden and Chauvez were motivated by the protected conduct when they held the hearings. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (holding that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (concluding that "bare allegations of malice on the defendants' parts are not enough to establish retaliation claims" that will survive § 1915A screening (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))). Here, Plaintiff fails

to allege any facts to show that Defendants Hadden and Chauvez had any ulterior motives, let alone retaliatory motives, when they held hearings regarding Plaintiff's property and misconduct charge pursuant to MDOC procedure. Therefore, Plaintiff fails to state a plausible First Amendment retaliation claim against (i) Defendant Chauvez, and (ii) Defendant Hadden with respect to the hearings conducted regarding Plaintiff's property.

### b.    Defendant Guiles

With respect to Defendant Guiles's issuance of the "Class II misconduct ticket, 'Interference With Administrative Rules[,]'" the misconduct ticket stemmed from Plaintiff's prior grievance in which he named the incorrect officer. (Compl., ECF No. 1, PageID.4.) Liberally construing *pro se* Plaintiff's complaint, as the Court is required to do, Plaintiff alleges this misconduct ticket was issued in retaliation for the filing of the original grievance. (*Id.*)

Under MDOC Policy Directive 03.03.105, an "Interference with the Administration of Rules" misconduct violation may be issued for "[a]cts intending to impede, disrupt, or mislead the disciplinary process for staff or prisoners." MDOC Policy Directive 03.03.105, Attach. B (eff. July 1, 2018). If this charge is "written as a result of a grievance, it must be shown that [the] prisoner knew [the] allegation was false when s/he made it and intentionally filed a false grievance." *Id.*

When an "Interference with the Administration of Rules" misconduct ticket, such as Plaintiff's, is issued as a result of a previously written grievance, all three elements of a retaliation claim are necessarily present because the misconduct ticket is issued for filing the grievance, and the filing of non-frivolous grievances is protected activity. However, in this case, Plaintiff concedes that he did in fact name the wrong officer in his grievance, which appears to indicate that Plaintiff's original grievance may not have been non-frivolous, and as such, may not have been protected activity. Nevertheless, the factual allegations in Plaintiff's complaint, accepted as true and in the light most favorable to Plaintiff, suggest that Plaintiff did not *intentionally* name the

14

wrong officer in his grievance. Therefore, taking Plaintiff's factual allegations as true, the Court cannot conclude that Plaintiff's original grievance—in which Plaintiff contends he *mistakenly* named the incorrect officer—was frivolous; instead, at this stage of the proceedings, the Court accepts Plaintiff's allegation that his original grievance was non-frivolous. If Plaintiff's original grievance was non-frivolous, then it constitutes protected activity, and the resulting adverse action—the issuance of the misconduct charge—was based on, and motivated by, the protected activity. Accordingly, at this stage of the proceedings, Plaintiff has adequately alleged a First Amendment retaliation claim against Defendant Guiles regarding the issuance of the "Interference With Administrative Rules" misconduct ticket.

### 3. Placement on Modified Grievance Access

With respect to Plaintiff's claim that Defendant Robinson placed him on modified grievance access "in retaliation for filing grievances," (Compl., ECF No. 1, PageID.5), the United States Court of Appeals for the Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse action for purposes of a retaliation claim. *See, e.g.*, *Alexander v. Vittitow*, No. 17-1075, 2017 WL 7050641, at *5 (6th Cir. Nov. 9, 2017); *Jackson v. Madery*, 158 F. App'x 656, 660 (6th Cir. 2005) (per curiam), *abrogated on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005); *Kennedy v. Tallio*, 20 F. App'x 469, 471 (6th Cir. 2001). Placement on modified access would not deter a person of ordinary firmness from continuing to engage in protected conduct because modified-access status does not impair the ability to file civil rights actions in federal court. A plaintiff's placement on modified access to the grievance procedure merely enables prison officials to screen grievances prior to filing to determine whether they are grievable, non-frivolous, and non-duplicative. *See Kennedy*, 20 F. App'x at 471 (citing MDOC Directive 03.02.130(II)(PP)). For the same reasons that placement on modified grievance access does not amount to adverse

action, an official's rejection of a grievance is not sufficiently adverse to state a retaliation claim. *See, e.g.*, *Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 26, 2016). Plaintiff therefore fails to state a cognizable First Amendment retaliation claim against Defendant Robinson.

### 4. Conditions of Confinement

Plaintiff alleges that he was denied laundry services, showers, razors, yard time, and some meals, and he "was retaliated against for exercising his First Amendment [r]ight when addressing these issues." (Compl., ECF No. 1, PageID.6–7.) However, Plaintiff does not indicate which of the named Defendants were involved in retaliating against him for "addressing" the above-listed issues. It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim); *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008))); *cf. Boxill v. O'Grady*, 935 F.3d 510, 518 (6th Cir. 2019) ("Summary reference to a single, five-headed 'Defendants' does not support a reasonable inference that *each* Defendant is liable for retaliation." (citations omitted)). Plaintiff therefore fails to state a First Amendment retaliation claim regarding his attempts to address the conditions of his confinement.

### C. Fourteenth Amendment Due Process

### 1. Personal Property

Plaintiff asserts that his due process rights were violated when Defendant Johnson disposed of his footlockers and Defendant Hadden failed to return his baseball glove and leather gloves to

him. (Compl., ECF No. 1, PageID.3, 6.) Plaintiff's claim is barred by the doctrine set forth in *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, an individual deprived of property by a "random and unauthorized act" of a state employee cannot maintain a federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, while real, is not "without due process of law." *Id.* at 537. This doctrine applies to both negligent and intentional deprivations of property, as long as the deprivation was not pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984). Plaintiff must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). The Sixth Circuit has noted that a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

In his complaint, Plaintiff makes a conclusory allegation that his "state property claim remedies are unreasonable." (Compl., ECF No. 1, PageID.1.) However, the Court concludes that Plaintiff's conclusory allegation that available state remedies are "unreasonable," which is unsupported by any additional facts or allegations, is insufficient to sustain Plaintiff's burden to show that state post-deprivation remedies are inadequate. Plaintiff has available to him numerous state post-deprivation remedies. First, a prisoner who incurs a loss through no fault of his own may petition the institution's Prisoner Benefit Fund for compensation. MDOC Policy Directive 04.07.112, ¶ b (eff. Dec. 12, 2013). Moreover, aggrieved prisoners may submit claims for property loss of less than $1,000.00 to the State Administrative Board. Mich. Comp. Laws. § 600.6419; MDOC Policy Directive 03.02.131 (eff. Oct. 21, 2013). Finally, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments

17

or officers." Mich. Comp. Laws § 600.6419(1)(a) (eff. Nov. 12, 2013). The Sixth Circuit has specifically held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff alleges no reason why a state-court action would not afford him complete relief for the deprivations, either negligent or intentional, of his personal property. Plaintiff's due process claims against Defendants regarding his property therefore will be dismissed.

### 2.    Misconduct Charges and Hearings

Plaintiff alleges that Defendants violated his due process rights under the Fourteenth Amendment with respect to (i) the issuance of a "false charge of threatening behavior," which Plaintiff received when he tried to stop "the destruction of his footlockers," (Compl., ECF No. 1, PageID.3); (ii) the issuance of a "Notice to Conduct an Administrative Hearing" regarding his footlockers five days after the disposal of the footlockers, (*id.*, PageID.5); (iii) the "ex parte" hearing regarding the disposal of his footlockers, (*id.*); (iv) the " hearing for Plaintiff's Wilson 700 baseball glove and leather gloves," at which Plaintiff contends he "provided proof of purchase [for] to no avail," (*id.*, PageID.6); (v) the issuance of a "Class II misconduct ticket, 'Interference With Administrative Rules[,]'" because Plaintiff had incorrectly named an officer, "who was not involved in delivering Plaintiff's property," in his grievance, (*id.*, PageID.4); and (vi) the misconduct hearing for the "Interference With Administrative Rules" charge. (*Id.*)

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the

18

procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

The United States Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, the Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995).

Here, Plaintiff indicates that he received a Class II misconduct ticket for interfering with administrative rules; he does not identify the specific misconduct charges that he received for his actions related to the footlockers, and from Plaintiff's allegations, it appears that the hearing regarding his baseball glove and leather gloves dealt with whether he could possess the items, rather than any misconduct charges related to his possession of the items. (Compl., ECF No. 1, PageID.4–6.) Further, Plaintiff does not allege that any sanction he received impacted the duration of his sentence. Moreover, with respect to Class II misconduct convictions, Plaintiff could not have been denied good time or disciplinary credits as a result of a Class II misconduct conviction. *See* MDOC Policy Directive 03.03.105, ¶ AAAA (eff. July 1, 2018). The Sixth Circuit routinely has held that misconduct convictions that do not result in the loss of good time are not atypical and significant deprivations and therefore do not implicate due process. *See, e.g.*, *Ingram v. Jewell*, 94

F. App'x 271, 273 (6th Cir. 2004), *overruled on other grounds by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Carter v. Tucker*, 69 F. App'x 678, 680 (6th Cir. 2003); *Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999).

Furthermore, Plaintiff has not alleged that he suffered an "atypical and significant" deprivation. *Sandin*, 515 U.S. at 484. Plaintiff alleges that he "suffered loss of property, loss of yard privileges, loss of communication with friends and family and was confined in segregation for weeks;" however, as explained below, none of the alleged deprivations trigger a right to due process. (Compl., ECF No. 1, Page ID.5.) With respect to Plaintiff's placement in segregation as a result of his misconduct tickets, placement in segregation does not constitute an "atypical" and "significant deprivation." *Sandin*, 515 U.S. at 484. In *Sandin*, the United States Supreme Court concluded that placement in segregation for 30 days did not impose an atypical and significant hardship. *Id.* Similarly, the Sixth Circuit has held that placement in administrative segregation for two months does not require the protections of due process. *See Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant). Instead, generally only periods of segregation lasting for several years or more have been found to be atypical and significant. *See, e.g.*, *Selby v. Caruso*, 734 F.3d 554, 559 (6th Cir. 2013) (concluding that thirteen years of segregation implicates a liberty interest); *Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (finding that eight years of segregation implicates a liberty interest); *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008) (remanding to the district court to consider whether the plaintiff's allegedly "indefinite" period of segregation, i.e., three years without an explanation from prison officials, implicates a liberty interest). Here, Plaintiff does not allege that he was placed in segregation for an extended period of time; instead, he alleges that he

was placed in segregation "for weeks," indicating that the placement was for less than a year. Plaintiff, therefore, has failed to allege any facts to show that his placement in segregation triggered a right to due process.

The same is true for the loss of yard time and loss of communication with friends and family. If confinement in segregation does not implicate a protected liberty interest, it follows that the loss of these privileges, which are lesser punishments, do not implicate such an interest. *Cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not "rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs). Consequently, Plaintiff's loss of privileges did not trigger a right to due process.

Accordingly, for all of the foregoing reasons, Plaintiff fails to state a Fourteenth Amendment due process claim.[3]

---

[3] Moreover, to the extent that Plaintiff intended to raise a substantive due process claim regarding his false and improper misconduct charges, he fails to state such a claim. "Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)).

"Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)).

"Where a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for

**D.      Access to the Grievance Process Under the First and Fourteenth Amendments**

Plaintiff also alleges that Defendants violated his rights under the First and Fourteenth Amendments with respect to (i) the responses, or lack thereof, that he received to his grievances and (ii) his ability to access the grievance process. (Compl., ECF No. 1, PageID.2–6.)

Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *Carpenter v. Wilkinson*, No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Additionally, Plaintiff's right to petition the government is not violated by Defendants' failure to process or act on his grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State*

---

analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). In this case, the Fourteenth Amendment Procedural Due Process Clause applies to protect Plaintiff's liberty interest in the misconduct charges and hearings. Consequently, any intended substantive due process claim is properly dismissed.

*Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977); *cf. Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required).

Nor did Plaintiff's placement on modified access violate his rights under the First Amendment. "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Plaintiff had other means of exercising his right to petition

government for redress of grievances. Indeed, Plaintiff's ability to seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Further, Plaintiff was not wholly denied access to the grievance process. Placement on modified access does not prohibit an inmate from utilizing the grievance process. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445–47 (6th Cir. 2005); *Corsetti v. McGinnis*, 24 F. App'x 238, 241 (6th Cir. 2001). The inmate may still request a grievance form and, if the form is provided, submit grievances to the grievance coordinator, who reviews the grievance to determine whether it complies with institutional rules regarding the filing of grievances. *See* MDOC Policy Directive 03.02.130 ¶ MM (eff. Mar. 18, 2019). Moreover, if a prisoner submits a grievance obtained from a source other than the Step-I grievance coordinator, the grievance coordinator may reject the grievance, in accordance with ¶ J of the policy. (*Id.* ¶¶ MM, J(3).) As with any grievance rejection under ¶ J, the prisoner may appeal the rejection to the next step of the grievance process. *Id.* ¶ I. There is nothing constitutionally improper about this review process for a prisoner who has demonstrated an inability to properly utilize the grievance process in the past.

Finally, to the extent that Plaintiff complains about Defendants' failure to provide him a satisfactory response to his grievances, the First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple*, 183 F.3d at 479.

Therefore, for all of these reasons, Plaintiff fails to state a claim under the First and Fourteenth Amendments regarding his access to the grievance process.

### E.    Eighth Amendment

Plaintiff alleges that Defendant Hadden violated Plaintiff's rights under the Eighth Amendment. (Compl., ECF No. 1, PageID.8.)

24

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In order for a prisoner to prevail on an Eighth Amendment claim, the prisoner must show that he faced a sufficiently serious risk to his health or safety and that defendants acted with "'deliberate indifference' to inmate health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that

25

he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844.

Here, Plaintiff contends that Defendant Hadden is liable "for prison conditions [that] when taken overall add up to create an Eighth Amendment violation." (Compl., ECF No. 1, PageID.8.) In support of his claim, Plaintiff cites the portion of his complaint in which he lists the grievances that he filed, all of which he indicates were "rejected as affecting the general population" and "being a warden's forum issue." (*Id.*, PageID.6–7.) Specifically, Plaintiff indicates that he filed grievances regarding the following issues: (i) "not being allowed laundry service," (ii) "not being allowed showers," (iii) "not being provided razors," (iv) "not receiving yard," and (v) "for missing meals." (*Id.*, PageID.6.) Plaintiff contends that "[s]egregation housing rules" provide for "[l]aundry 3 times per week," "one hour of outside yard 5-days per week," and "three meals per day." (*Id.*, PageID.7.)

As an initial matter, although Plaintiff alleges in a conclusory manner that Defendant Hadden is liable "for prison conditions [that] when taken overall add up to create an Eighth Amendment violation," (*Id.*, PageID.8), Plaintiff does not allege any facts to show that Defendant Hadden was personally involved in the above-listed deprivations. Where a person, such as Defendant Hadden, is named as a defendant without an allegation of specific conduct, the claim is subject to dismissal. *See Gilmore*, 92 F. App'x at 190; *Frazier*, 41 F. App'x at 764; *see also Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).

Furthermore, construing Plaintiff's *pro se* complaint with all required liberality, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), it appears that Plaintiff believes that Defendant Hadden, as a resident unit manager at IBC, was responsible for "keep[ing] Plaintiff in segregation," which is where Plaintiff was housed when the above-listed deprivations occurred. (Compl., ECF No. 1, PageID.7.) To the extent that Plaintiff seeks to hold Defendant Hadden liable for the actions of his subordinates, government officials, such as Defendant, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004).

Moreover, even setting aside the above-discussed deficiencies regarding Defendant Hadden's liability, Plaintiff fails to allege sufficient facts to state a plausible Eighth Amendment claim. Specifically, Plaintiff generally contends, without providing any additional facts, that he was not allowed laundry services or showers, was not provided razors, did not receive yard time, and missed meals. (Compl., ECF No. 1, PageID.6). However, Plaintiff fails to allege any facts to suggest that the deprivations were anything other than temporary inconveniences, and allegations about temporary inconveniences do not show that the conditions fell beneath the minimal civilized measure of life's necessities as measured by a contemporary standard of decency. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also J.P. v. Taft*, 439 F. Supp. 2d 793, 811

(S.D. Ohio 2006) ("[M]inor inconveniences resulting from the difficulties in administering a large detention facility do not give rise to a constitutional claim." (internal quotation marks omitted)).

With respect to access to laundry services, showers, and razors, the Constitution only requires that prisoners be allowed to maintain hygiene. *See Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003) (finding that allegations of overcrowded cells and denials of daily showers and out-of-cell exercise do not rise to constitutional magnitude, where a prisoner is subjected to the purportedly wrongful conditions for six days one year and ten days the next year); *Siller v. Dean*, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb. 1, 2000) (concluding that the denial of showers and other personal hygiene items for six days was not actionable under the Eighth Amendment); *Metcalf v. Veita*, No. 97-1691, 1998 WL 476254, at *2 (6th Cir. Aug. 3, 1998) (finding that an eight-day denial of showers, trash removal, cleaning, and laundry did not result in serious pain or offend contemporary standards of decency under the Eighth Amendment). Plaintiff has not alleged any facts to suggest that he was unable to maintain hygiene for an extended period of time.

As to out-of-cell time in the yard, Plaintiff's conclusory allegations suggest only a temporary inconvenience. Further, Plaintiff does not allege that his cell was too small to permit any exercise or that he suffered any ill effects from the temporary limitation on his yard privileges. *See, e.g., May v. Baldwin*, 109 F.3d 557, 565-66 (9th Cir. 1997) (holding that the denial of out-of-cell exercise for 21 days did not rise to Eighth amendment violation); *Knight v. Armontrout*, 878 F.2d 1093, 1096 (8th Cir. 1989) ("Denial of recreation for a short period, per se, is not a constitutional violation."); *Davenport v. DeRobertis*, 844 F.2d 1310 (8th Cir. 1988) (upholding a 90-day segregation threshold before five hours of weekly out-of-cell exercise is required); *Harris v. Fleming*, 839 F.2d 1232, 1236 (7th Cir. 1988) (concluding that there was no Eighth Amendment violation when plaintiff was held in segregation without outdoor exercise for 28 days).

28

With respect to missing meals, the deprivation of a few meals for a limited time generally does not rise to the level of an Eighth Amendment violation, and Plaintiff fails to allege any facts to suggest that he missed meals for more than a limited period of time. *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (per curiam) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 F. App'x 569, 570 (6th Cir. 2012) (holding that the denial of seven meals over six days was not an Eighth Amendment violation); *Richmond v. Settles*, 450 F. App'x 448, 456 (6th Cir. 2011) (concluding that the denial of five meals over three consecutive days, and a total of seven meals over six consecutive days, did not rise to Eighth Amendment violation, where the prisoner failed to allege that his health suffered); *see also Berry v. Brady*, 192 F.3d 504, 507–08 (5th Cir. 1999) (holding that the denial of a few meals over several months did not state a claim); *Staten v. Terhune*, 67 F. App'x 462, 462–63 (9th Cir. 2003) (finding that the deprivation of two meals was not sufficiently serious to form the basis of an Eighth Amendment claim).

Even combining all of the above-discussed deprivations, Plaintiff allegations do not show the type of deprivation that rises to the level of an Eighth Amendment violation. Accordingly, for all of the foregoing reasons, Plaintiff's Eighth Amendment claim will be dismissed.[4]

---

[4] To the extent that Plaintiff intended to claim that any of the other named Defendants violated his rights under the Eighth Amendment, he fails to provide any allegations of specific conduct by the other named Defendants that violated his Eighth Amendment rights. Plaintiff's claims therefore fall far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure, and any intended Eighth Amendment claims against the other named Defendants are subject to dismissal, even under the liberal construction afforded to *pro se* complaints. Fed. R. Civ. P. 8(a)(2); *see Gilmore*, 92 F. App'x at 190; *Frazier*, 41 F. App'x at 764.

**F.      Violation of MDOC Policy**

Plaintiff appears to suggest that Defendants' actions violated MDOC policy. (Compl., ECF

No. 1, PageID.3–4, 7.) However, claims under § 1983 can only be brought for "deprivations of

rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*,

457 U.S. 922, 924 (1982). Claims under § 1983 do not provide redress for a violation of a state

law or policy. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d

1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007).

The only way a policy might enjoy constitutional protection would be through the Due Process

Clause.

To demonstrate such a due process violation, a plaintiff must prove the following elements:

(1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a

deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438

F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no

federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519

(6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts

have routinely recognized that a prisoner does not enjoy any federal protected liberty or property

interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney*, 501 F.3d

at 581 n.2; *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164.

Accordingly, Plaintiff's allegations that Defendants violated MDOC policy fail to raise a

cognizable federal constitutional claim.

**IV.    State Law Claim**

In addition to Plaintiff's federal claims, liberally construing Plaintiff's complaint, it appears

that Plaintiff may have intended to bring a gross negligence claim under state law. (Compl., ECF

No. 1, PageID.4–5.) As discussed above, § 1983 does not provide redress for a violation of a state

law. *See Pyles*, 60 F.3d at 1215; *Sweeton*, 27 F.3d at 1166. Therefore, Plaintiff's assertion that any of the Defendants violated state law fails to state a claim under § 1983.

Moreover, in determining whether to retain supplemental jurisdiction over state law claims, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993); *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotation marks omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, any intended state law claims are unrelated to Plaintiff's federal retaliation claims, which remain in the case. The balance of the relevant considerations therefore weighs against the continued exercise of supplemental jurisdiction over the state law claims. Accordingly, any intended state law claims will be dismissed without prejudice to Plaintiff's ability to bring those claims in the state courts.

## Conclusion

Plaintiff's motion for the appointment of counsel (ECF No. 3) will be denied. Furthermore, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Chauvez, Robinson, and IBC will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, all of the federal claims against Defendants Hadden, Johnson, and Guiles, except for Plaintiff's First Amendment retaliation claims against (i) Defendant Hadden regarding the increase in Plaintiff's security level, (ii) Defendant Johnson regarding the disposal of Plaintiff's

footlockers and the issuance of a false misconduct charge, and (iii) Defendant Guiles regarding the issuance of the "Interference With Administrative Rules" misconduct ticket. Further, the Court will dismiss any intended state law claims without prejudice. The above-listed First Amendment retaliation claims against Defendants Hadden, Johnson, and Guiles remain in the case.

An order consistent with this opinion will be entered.


Dated:   March 14, 2022            /s/ Robert J. Jonker
                                    ROBERT J. JONKER
                                    CHIEF UNITED STATES DISTRICT JUDGE